## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, Individually and On Behalf Of All Others Similarly Situated | : : : | CIVIL ACTION |
| v. | : : | |
| REPRODUCTIVE MEDICINE ASSOCIATES OF PHILADELPHIA, P.C. | : : | NO. 23-2540 |

## MEMORANDUM OPINION

**Savage, J.**                                                                 **September 13, 2023**

Plaintiff has moved to remand this class action claiming defendant Reproductive Medicine Associates of Philadelphia, P.C. ("RMA") disclosed patients' confidential personal identifying information and protected health information to third parties without their authorization. She argues that removal was improvident because none of her claims arise under federal law. RMA removed the case from state court on the purported basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. It contends that resolution of the plaintiff's claims requires an analysis of the Health Insurance Portability and Accountability Act ("HIPAA") and its regulations.

We conclude that there is no federal issue necessarily raised. Therefore, because there is no federal question or any other basis for exercising federal jurisdiction in this action asserting only state law claims, we shall grant the motion and remand.

## Background

RMA provides reproductive medical care and fertility treatment in Pennsylvania.[1] RMA's patients use online platforms to find healthcare services and providers, to access

---

[1] Class Action Compl. & Jury Demand ¶¶ 4, 33, ECF No. 1-3 (attached as Ex. A to Notice of Removal) ["Compl."].

information about health conditions and treatment service options, and to request and schedule appointments.[2]

Plaintiff's Complaint describes how RMA gathers, uses, and distributes its patients' private information collected through its online platforms. RMA websites use "pixels," a tracking technology that collects information of visitors to its website and their interactions, including pages viewed, buttons clicked, and information submitted.[3] Pixels then transmits this information to third parties to use with other data for marketing.[4]

RMA embedded several pixels and other tracking technologies in its websites, including the Meta (Facebook) Pixel, Facebook's Conversion Application Programming Interface ("CAPI"), and the Google Tag Manager, Microsoft Clarity, AppNexus, Jotjar, Arttrk.com, and Trade Desk.[5] These technologies were used to collect users' search terms, button clicks and form submissions, revealing information about their medical conditions and treatment.[6] The information collected through RMA's use of such technologies was transmitted to Facebook and other third parties without the website users' knowledge or consent.[7]

Plaintiff alleges that the personal data and private information had economic value and conferred a financial benefit on RMA and others.[8] RMA used the pixel data "to market

---

[2] *Id.* ¶¶ 5, 35.
[3] *Id.* ¶¶ 6, 8.
[4] *Id.* ¶ 8.
[5] *Id.* ¶¶ 9, 17.
[6] *Id.* ¶¶ 9, 15.
[7] *Id.* ¶¶ 9-12, 17, 19–21.
[8] *See id.* ¶¶ 120–27.

its services and bolster its profits."[9] It receives compensation from third parties and it uses information to target patients and potential patients with advertisements based on their internet communications and interactions.[10] The third parties also sold the data harvested to advertising clients.[11]

Plaintiff began treating with RMA in July 2022.[12] At RMA's direction and encouragement, she accessed RMA's online platforms to communicate healthcare and identifying information to RMA.[13] She reasonably expected that her online communications with RMA were confidential, would not be disclosed to any third party, and would be safeguarded according to RMA's privacy policies and the law.[14] Through the Meta Pixel and other tracking technology, RMA sent or facilitated the interception of plaintiff's communications containing confidential healthcare and identifying information to Facebook and others, without the knowledge, consent, or written authorization of plaintiff or class members.[15]

In the background section of her complaint, plaintiff details how RMA's conduct violated the standards under which a healthcare provider may disclose a patient's personally identifiable, non-public medical information (PHI) under federal HIPAA statutes and regulations.[16] Plaintiff also alleges that defendant violated industry standards of

---

[9] *Id.* ¶ 15.
[10] *Id.* ¶¶ 120–23.
[11] *Id.* ¶¶ 124–27.
[12] *Id.* ¶ 84.
[13] *Id.* ¶ 85–86.
[14] *Id.*
[15] *Id.* ¶¶ 19, 84–89.
[16] *Id.* ¶¶ 98–105, 112–19.

confidentiality as defined by the American Medical Association (AMA), RMA's privacy policies, and the plaintiff's own reasonable expectations of privacy with respect to her personal and medical information.[17]

Plaintiff initiated this action in the Court of Common Pleas of Philadelphia County. Her complaint asserts seven causes of action, each arising under Pennsylvania statutory or common law:

- Count I—a negligence claim based on RMA's breach of its duty to exercise reasonable care in handling and using plaintiff's private information;[18]

- Count II—a claim for invasion of privacy/intrusion upon seclusion based on RMA's disclosure of plaintiff's communications without her knowledge or consent where she held a reasonable expectation of privacy with respect to such information;[19]

- Count III—a breach of implied contract claim based on RMA's breach of the implicit agreement between RMA and plaintiff, under which plaintiff agreed to provide private information and pay compensation for medical treatment received and RMA agreed to safeguard and protect its patients' confidential health information;[20]

- Count IV—an unjust enrichment claim on the basis that plaintiff conferred a monetary benefit on RMA in the form of valuable private medical information that RMA claimed it kept private, that RMA collected, used, and disclosed this private information for its own gain, and that plaintiff would not have provided had she known her information would be disclosed;[21]

- Count V—a claim for breach of fiduciary duty based on RMA's failure to act with the utmost good faith, fairness, honesty and loyalty by failing to protect and intentionally disclosing plaintiff's private information in

---

[17] *Id.* ¶¶106–11.

[18] *Id.* ¶¶ 148–55.

[19] *Id.* ¶¶ 156–65.

[20] *Id.* ¶¶ 166–76.

[21] *Id.* ¶¶ 177–84.

- violation of RMA's fiduciary duty arising from the relationship existing between RMA and its patients;[22]
- Count VI—a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), alleging that RMA violated subsections (v), (vii), (ix), and (xxi) of the statute's "unfair methods of competition" and "unfair or deceptive acts or practices" provisions, codified at 73 P.S. § 201-2(4);[23] and
- Count VII—a claim under the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. § 5701, *et seq*. ("WESCA"), based on RMA's unlawful interception and disclosure of plaintiff's electronic communications as prohibited by Sections 5701, 5703, and 5741 of the WESCA.[24]

In its Notice of Removal, RMA contends that federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 because the resolution of plaintiff's state law claims will require adjudication of substantial issues of federal law under HIPAA.[25] Plaintiff moves to remand, arguing that none of plaintiff's state law claims necessarily raises a substantial question of federal law.

## Federal Question Jurisdiction

Removal statutes are strictly construed against removal, and all doubts are resolved in favor of remand. *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014) (citation omitted); *Brown v. JEVIC*, 575 F.3d 322, 326 (3d Cir. 2009). A defendant removing a case from state court under § 1331 bears the burden of demonstrating federal jurisdiction. *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779

---

[22] *Id.* ¶¶ 185–91.
[23] *Id.* ¶¶ 192–206.
[24] *Id.* ¶¶ 207–20.
[25] *Id.* ¶¶ 15, 17–19.

F.3d 214, 218 (3d Cir. 2015) (citing *Samuel–Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004)).

A defendant may remove a civil action that raises a federal question. *Smith v. Indus. Valley Title Ins. Co.*, 957 F.2d 90, 92 (3d Cir. 1992) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); 28 U.S.C. §§ 1331, 1441. To confer federal question jurisdiction, the claim must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see also Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006).

Typically, a claim "arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (citation omitted). In a "small category of cases," however, federal question jurisdiction over a state-law claim exists where the complaint implicates a federal issue that satisfies the four-pronged test set forth in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). *Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 249 (3d Cir. 2016) (quoting *Gunn*, 568 U.S. at 258). For federal question jurisdiction to lie under *Grable*, the federal issue must be: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (summarizing the *Grable* test). Thus, to establish federal question jurisdiction under the *Grable* test, the complaint must show that the "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Goldman*, 834 F.3d at 249 (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983)).

6

**Discussion**

A federal issue is not necessarily raised here.  Resolving the state law claims does not require application or interpretation of federal law.

To necessarily raise a federal issue, "vindication of a right under state law [must] necessarily turn[ ] on some construction of federal law."  *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014) (alteration in original) (quoting *Franchise Tax Bd.*, 463 U.S. at 9), *aff'd*, 578 U.S. 374 (2016).  Additionally, the federal issue must be significant to the parties.  *Gunn*, 568 U.S. at 260.

The grounds for federal question jurisdiction must appear on the face of the plaintiff's complaint.  *Caterpillar*, 482 U.S. at 392; *Goldman*, 834 F.3d at 249 (citing *Franchise Tax Bd.*, 463 U.S. at 9–11).  To avoid removal, the plaintiff may explicitly choose to present only state law claims and forego any federal claims.  *Caterpillar*, 482 U.S. at 392.  A possible or anticipated federal defense does not supply federal question jurisdiction.  *Franchise Tax Bd.*, 463 U.S. at 10.  Therefore, to establish federal question jurisdiction when only state law claims have been pled, the complaint must show that the "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Goldman*, 834 F.3d at 249 (quoting *Franchise Tax Bd.*, 463 U.S. at 27–28).

In moving to remand, the plaintiff argues that no federal issues are "necessarily raised" because "the claims in the complaint are supported by alternative allegations that Defendant violated industry standards that exist independently of any federal law."[26]  Plaintiff relies on *Manning v. Merrill Lynch Pierce Fenner & Smith, LLC,* 772 F.3d 158 (3d

---

[26] Pl.'s Br. in Supp. of Mot. to Remand for Lack of Subject Matter Jurisdiction at 6, ECF No. 9.

Cir. 2014), *aff'd,* 578 U.S. 374.[27] In *Manning*, the plaintiffs sued defendants in New Jersey state court for manipulating stock prices in short sales. After the defendants removed the case, plaintiffs moved to remand because the Amended Complaint alleged only state-law causes of action, even though it extensively discussed federal stock regulations under 17 C.F.R. § 242.200 *et seq.* ("Regulation SHO"). Short sales are regulated by the Securities and Exchange Commission's Regulation SHO. The plaintiffs' Amended Complaint repeatedly referred to Regulation SHO and, "both expressly and by implication," asserted that "Defendants repeatedly violated federal law." *Id.* at 161.

Nonetheless, despite these references to a federal regulation, the Third Circuit Court of Appeals held that the Amended Complaint did not necessarily raise a federal issue. It determined that the federal regulation was not an element of the plaintiffs' claims, the resolution of which were not dependent on federal law. *Id.* at 164. None of the state law claims was predicated on a violation of federal law. *Id.*

The Court found that because plaintiffs did not plead Regulation SHO violations "*as a predicate violation*" for stating their claims to recovery under state law, the action could not be removed on the basis of federal question jurisdiction. *Id.* at 164 (emphasis added). The court added that "even if Plaintiffs' claims were *partially* predicated on federal law, federal law would still not be necessarily raised." *Id.* (emphasis in original). It explained that when the complaint alleges both federal and state claims and the plaintiff could prevail on the state claims without the need to prove a violation of federal law, no federal question is necessarily raised. *Id.* (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988)) ("[A] claim supported by alternative theories in the

---

[27] *Id.* at 4–5.

complaint may not form the basis for [federal] jurisdiction unless [federal] law is essential to each.").

Plaintiff contends that no federal issue is necessarily raised because she need not "prevail on any question under HIPAA to prevail" on her state law claims.[28] We agree.

There is no federal issue necessarily raised in this action. The complaint asserts five Pennsylvania common law claims—negligence, invasion of privacy/intrusion on seclusion, breach of implied contract, unjust enrichment, and breach of fiduciary duty. It also asserts claims based on violations of two Pennsylvania state statutes, the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et. seq.*, and the Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. § 5701, *et seq.* Plaintiff expressly disavows making a claim under federal law. Plaintiff's claims are predicated on state law only and are independent of any violations of HIPAA. Plaintiff's right to recover on any of her state law claims will not depend on her ability to prove that RMA's conduct constituted a violation of HIPAA or any other federal law. In short, the adjudication of plaintiff's claims will require no interpretation or application of federal law.

Plaintiff's citations to HIPAA standards and use of HIPAA defined terms do not, as RMA suggests,[29] indicate her intent to use HIPAA to supply the requisite elements of proof of any of plaintiff's claims. Rather, any references in the complaint to HIPAA merely provide context to the claims brought under the statutory and common law of Pennsylvania. Because the adjudication of plaintiff's state-law causes of action will not

---

[28] Pl.'s Reply Br. in Supp. of Mot. to Remand for Lack of Subject Matter Jurisdiction at 4, ECF No. 15.

[29] *See* Reproductive Medicine Assocs. of Philadelphia, P.C.'s Mem. in Opp. To Pl.'s Mot. to Remand at 7–8, ECF No. 14.

"necessarily turn[] on some construction of federal law," no federal issue is necessarily raised in this action. *Manning*, 772 F.3d at 163 (emphasis in original) (quoting *Franchise Tax Bd.*, 463 U.S. at 9).

Because we find there is no federal issue necessarily raised, we do not consider the three remaining *Grable* issues.

## Conclusion

The absence of a federal issue necessarily requiring resolution in this case raising only state statutory and common law claims precludes "arising under" federal question jurisdiction under the *Grable* test. Therefore, because RMA has not met its burden of demonstrating that there is a federal question or other basis for exercising jurisdiction, we shall grant the motion to remand this action to the state court.